<pre>
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2

 3    ------------------------------X
                                    :
 4    UNITED STATES OF AMERICA,     :
                                    :  10-CR-0531 (BMC)
 5              v.                  :
                                    :  April 26, 2013
 6    PABLO VARGAS,                 :  Brooklyn, New York
                                    :
 7                    Defendant.    :
                                    :
 8    ------------------------------X

 9
                TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10             BEFORE THE HONORABLE JAMES ORENSTEIN
                    UNITED STATES MAGISTRATE JUDGE
11

12    APPEARANCES:

13
      For the Government:       UNITED STATES ATTORNEY
14                              BY:  NATHAN RILEY, ESQ.
                                     JUSTIN LERER, ESQ.
15                                   DOUGLAS PRAVDA, ESQ.
                                ASSISTANT U.S. ATTORNEYS
16

17    For the Defendant:        SANDFORD TALKIN, ESQ.
                                Talkin, Muccigrosso & Roberts LLP
18                              40 Exchange Place, 18th Floor
                                New York, NY 10005
19

20    Spanish Interpreter:      MARISTELA VERASTEGUI

21

22    Court Transcriber:        MARY GRECO
                                TypeWrite Word Processing Service
23                              211 N. Milton Road
                                Saratoga Springs, NY 12866
24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
</pre>

2

I N D E X

Defendant Sworn at Page 4

| EXHIBITS | Marked | Received |
|----------|--------|----------|
| 1    Plea Agreement | -- | 13 |

3

1              THE CLERK:  Criminal Cause For a Pleading, <u>USA v.</u>
2   <u>Pablo Vargas</u>, docket number 10-CR-531.  Counsel, please state
3   your appearances for the record starting with the Government.
4              MR. RILEY:  God afternoon, Your Honor.  Nathan Riley
5   for the United States.  With me at counsel table are Justin
6   Lerer and Douglas Pravda.
7              THE COURT:  Good afternoon, all.
8              MR. TALKIN:  Good afternoon, Your Honor.  San Talkin
9   for Mr. Vargas [indiscernible] Mr. Vargas who's seated
10  [indiscernible].
11             THE COURT:  Good afternoon.  Mr. Vargas, with the
12  assistance of the interpreter, are you able to understand me so
13  far?
14             THE DEFENDANT:  Yes, sir.
15             THE COURT:  If you have any difficulty understanding
16  me, let me know.  Will you do that, please?
17             THE DEFENDANT:  Yes, sir.
18             THE COURT:  All right.  Mr. Talkin, I understand your
19  client wishes to plead guilty to each of the three counts in
20  the superceding indictment pursuant to an agreement, is that
21  correct?
22             MR. TALKIN:  Correct, that's S3.
23             THE COURT:  All right.  Mr. Vargas, if you're going
24  to plead guilty to crimes today, there are some questions I
25  must ask you and your answers must be truthful, so I'm going to

4

1  ask you to stand for a moment to be sworn in.

2          THE CLERK:  Raise your right hand.

3  (AT THIS TIME THE DEFENDANT, PABLO VARGAS, WAS SWORN.)

4          THE CLERK:  You may be seated.

5          THE COURT:  Mr. Vargas, now that you have sworn to

6  tell the truth, you must tell the truth.  If you were

7  deliberately to lie in response to any of my questions, you can

8  face additional charges for perjury.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  So it's very important that you

11  understand my questions.  If you need me to repeat or explain

12  anything, just let me know.  Will you do that, please?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And if you need time to consult with your

15  attorney, let me know that, I'll give you as much time as you

16  like.  Will you do that, please?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Now, I've got a couple of documents that

19  appear to have your signature.  There is a one-page consent

20  form and a multiple page agreement.  Just look at those and let

21  me know if you signed those documents.

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  Before signing them, did you

24  read and understand each of them, or have each of them

25  explained to you and understand them?

5

1          THE DEFENDANT:  Yes, sir.  My lawyer explained them

2    to me.

3          THE COURT:  All right.  And Mr. Riley, has the

4    Government notified any victims of today's proceeding?

5          MR. RILEY:  Yes, Your Honor.

6          THE COURT:  And have any expressed a desire to be

7    heard today?

8          MR. RILEY:  No, Your Honor.

9          THE COURT:  All right.  And I know that there appears

10   to be no one in the gallery.

11          All right.  Mr. Vargas, I want to be sure that you're

12   competent to proceed today.  Tell me, please, how old are you?

13          THE DEFENDANT:  I'm 40 years old, soon to be 41.

14          THE COURT:  How far did you go in school?

15          THE DEFENDANT:  I reached the first grade of high

16   school.

17          THE COURT:  Are you now or have you recently been

18   under the care of a doctor or a psychiatrist for any reason?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  In the last 24 hours have you had any

21   pill, or drug, or medicine, or alcohol?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Have you ever been hospitalized or

24   treated in any way for substance abuse or addiction problem?

25          THE DEFENDANT:  No, sir.

6

1          THE COURT:  Is your mind clear right now?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Have you had any difficulty understanding

4   my questions to you?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Mr. Talkin, have you discussed the matter

7   of a guilty plea with your client?

8          MR. TALKIN:  Yes, I have.

9          THE COURT:  In your view does he understand the

10  rights that he would waive by pleading guilty?

11         MR. TALKIN:  Yes.

12         THE COURT:  Do you have any reason to question your

13  client's competence to proceed today?

14         MR. TALKIN:  No, I do not.

15         THE COURT:  All right.  Now, Mr. Vargas, let's

16  discuss first this one-page consent form that you signed.  I'm

17  what's known as a Magistrate Judge.  Your case is assigned to a

18  higher ranking judge named Judge Cogan.  The most important

19  difference between us for today's purpose is that if you're

20  convicted of any crimes in this case, it is Judge Cogan who

21  will decide what your sentence should be, not me.  For that

22  reason you might prefer to have Judge Cogan listen to your plea

23  in person.  And if you want to proceed that way, no harm will

24  come to you.  We'll simply find a time when Judge Cogan is

25  available.  Do you understand that?

7

 1          THE DEFENDANT:  Yes, sir.

 2          THE COURT:  If you understand that you have that

 3   right and you're willing to waive that right, I will listen to

 4   your plea today.  We're making a recording of everything that's

 5   being said here, and Judge Cogan will read a transcript of the

 6   proceeding before he decides whether to accept your plea and

 7   before he decides what your sentence should be.  Do you

 8   understand that?

 9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you consent to have me conduct today's

11   proceeding?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And is that what you intended by signing

14   this consent form?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  I want to make sure you

17   understand what the Government would have to prove to convict

18   you of the crimes in the indictment.  I'll take them one at a

19   time.  The first crime is described as Hobbs Act robbery

20   conspiracy.  To convict you of this offense, the Government

21   would have to prove beyond a reasonable doubt first that you

22   entered into an agreement with at least one other person.

23   They'd have to prove that the object or the purpose of that

24   agreement was to obstruct or delay or to affect commerce or to

25   delay or affect or obstruct the movement of articles or

8

1    commodities in commerce, and that the purpose was to do so by

2    robbing persons, in this case drug traffickers in New York,

3    North Carolina, Georgia and elsewhere.  They'd have to prove

4    that you entered into this agreement where you or somebody else

5    did something to make it succeed within the Eastern District of

6    New York, which is a geographic area that includes Brooklyn,

7    Queens, Staten Island, and Long Island.  And they'd have to

8    prove that you entered into this agreement, or that you or

9    somebody else did something to make it succeed during the time

10   period charged in the indictment of January 1, 2007 through

11   July 8, 2010.  They wouldn't have to prove that you were

12   involved that whole time, just that during that period you were

13   involved in a conspiracy.  Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  All right.  Mr. Riley, have I omitted or

16   misstated any of the essential elements of the offense?

17           MR. RILEY:  No, Your Honor.

18           THE COURT:  All right.  Let's move on to Count 2

19   which is described as conspiracy to distribute narcotics.  To

20   prove you guilty of this offense, the Government would have to

21   prove once again that you entered into an agreement with at

22   least one other person.  They'd have to prove that the purpose

23   or the object of this agreement was to distribute or to possess

24   with the intention of distributing a controlled substance.

25   They'd have to prove that the controlled substance to be

9

1   distributed as part of this agreement involved at least five

2   kilograms of cocaine.  They'd have to prove the same time and

3   place elements as the other offense, that you entered into the

4   conspiracy or somebody did something to make it succeed within

5   the Eastern District of New York and during the time period

6   mentioned in the indictment, January 1, 2007 through July 8,

7   2010.  They'd have to prove that you entered this agreement

8   knowingly and intentionally, and not as a result of some sort

9   of accident or mistake.  Do you understand that?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  And I should mention going back to the

12   first count, the robbery conspiracy, that agreement also the

13   Government would have to prove that you entered into it

14   knowingly and intentionally and not as a result of some sort of

15   accident or mistake.  Do you understand that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  And Mr. Riley, have I omitted or

18   misstated any essential elements of Count 2?

19            MR. RILEY:  No, Your Honor.

20            THE DEFENDANT:  No, sir.

21            THE COURT:  No, I was asking Mr. Riley.  That's okay.

22   Now, on the third count which is described as the unlawful use

23   of firearms, the Government would have to prove that with the

24   same time and place requirements that I described in the other

25   counts, that you either by yourself or acting together with

10

1  others intentionally used and carried at least one firearm in

2  connection and in relation to one of the crimes charged in

3  Count 1 and Count 2, and that you possessed that firearm, or at

4  least one firearm knowingly and intentionally, not as a result

5  of an accident or mistake, and that you did so to further the

6  crime charged in Count 1 or the crime charged in Count 2.  And

7  they'd have to prove that while carrying or using that firearm,

8  that firearm was brandished and discharged, fired.  Understand

9  all of that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  And Mr. Riley, have I omitted or

12  misstated any of the essential elements of that offense?

13         MR. RILEY:  No, Your Honor.

14         THE COURT:  All right.  Mr. Vargas, do you feel that

15  you understand what the Government would have to prove to

16  convict you of the three crimes charged against you in the

17  superceding indictment?

18         THE DEFENDANT:  I understand, yes, sir.

19         THE COURT:  You have a right to plead not guilty and

20  make the Government prove all of those things.  Do you

21  understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  If you plead not guilty, under our

24  constitution you'll be entitled to a speedy and public trial by

25  a jury with the assistance of an attorney on those charges.  Do

1  you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Mr. Talkin, are you appointed or

4  retained?

5          MR. TALKIN:  I am appointed.

6          THE COURT:  All right.  So because you cannot afford

7  private counsel, the Court has appointed Mr. Talkin to

8  represent you.  And if you wish to have a trial, Mr. Talkin

9  will represent you at every stage of these proceedings, at a

10  trial, preparing for a trial and at a trial if you wanted to

11  have a trial, at sentencing if you were found guilty, and on

12  appeal if you wish to challenge your conviction, all of it at

13  no expense to you  And if Mr. Talkin becomes unavailable for

14  any reason, another lawyer will be appointed at no cost to you

15  to replace him.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  At a trial, you would be presumed

18  innocent and the Government would have to overcome that

19  presumption and prove your guilt beyond a reasonable doubt.

20  You would not have to prove your innocence.  If the Government

21  failed to prove your guilt beyond a reasonable doubt, the jury

22  would have a duty to find you not guilty.  Do you understand

23  that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Also at the trial, the Government would

12

1   have to bring its witnesses to court so that they could testify

2   in your presence.  Your attorney would have the right to cross

3   examine those witnesses.  He could object to any evidence that

4   the Government tried to offer against you.  He could offer

5   evidence in your behalf if he thought that there was evidence

6   that might assist you, and he could compel witnesses who you

7   wish to call to appear at the trial.  Do you understand that?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Excuse me for a moment.

10              [Pause in proceedings.]

11          THE COURT:  At the trial, you also would have the

12   right to testify in your own behalf if you wish to do so but

13   you could not be forced to be a witness at your trial and

14   that's because under our constitution, no one could be forced

15   to be a witness against himself.  So if you decided to go to

16   trial and decided not to testify, the judge would tell the

17   jurors that they must not hold that against you.  Do you

18   understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Now, if you plead guilty and if based on

21   my recommendation the judge accepts that plea, you'll be giving

22   up your right to a trial and the other rights that we've

23   discussed.  There won't be a trial.  You will simply be found

24   guilty on the basis of your plea and you won't ever be able to

25   challenge that finding of guilt, not on appeal in this case,

13

1   and not in some later legal proceeding.  Do you understand

2   that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  You should also understand that if you

5   decide to plead guilty I'm going to ask you some questions

6   about what you did that makes you think you committed these

7   offenses.   If you decide to answer my questions, you'll be

8   giving up your right not to be a witness against yourself.  Do

9   you understand that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Are you willing to give up your right to

12  a trial and the other rights that we've discussed.

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  All right.  Now let's talk about this

15  second document you signed, the agreement that's been marked as

16  Court Exhibit 1.

17  (AT THIS TIME COURT EXHIBIT 1 MARKED)

18             THE COURT:  I have the original here with me that you

19  signed.  Do you have a copy with you at the table?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Okay.  If you need to look at the

22  original at any point, just let me know and I'll bring it to

23  you.  Will you do that, please?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  This document that you signed, Court

14

1  Exhibit 1, is this your agreement with the Government?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  I'm not going to go through it page by

4  page or paragraph by paragraph because I don't want to give you

5  the wrong idea that there's any one part of it that's more

6  important or less important than any other part.  As far as I

7  can tell by looking at the document, it's the whole thing that

8  is your agreement with the Government.  Is that your

9  understanding as well?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you think the Government has made any

12 promise that you're relying on that is not written down in this

13 agreement?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  All right.  Then let's talk about what

16 could happen at sentencing.  Now, there are three different

17 crimes and each of them has its own sentencing possibilities.

18 I'll tell you about each one individually, but before I do that

19 I want to make sure you understand two things.

20          First of all, the sentence could be stacked up on all

21 three.  So you might not begin to start serving your sentence

22 on the second count until you finish the first, and then you

23 might not begin to start the third count until you finish the

24 second.  Do you understand that?

25          THE DEFENDANT:  Yes.

1    THE COURT:  The other thing you must understand is

2  that the sentence on the third count must be consecutive to the

3  other two.  So even if the first two run concurrently, even if

4  you serve both of the sentences on Counts 1 and 2 at the same

5  time, you must complete the sentence on those two counts before

6  you can start serving a sentence on the third count.  Do you

7  understand that?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  All right.  With that understanding,

10  let's talk first about Count 1.  If you're convicted of that

11  crime, the judge can sentence you to spend up to 20 years in

12  prison.  Do you understand that?

13    THE DEFENDANT:  Yes, sir.

14    THE COURT:  There's no minimum prison term for Count

15  1, but if you are sent to prison, you could also be sentenced

16  to a term of supervised release of up to three years.  What

17  that means is upon your release from prison you would be

18  supervised and you would have to obey certain conditions.  And

19  if during that period of supervision of up to three years you

20  were to violate any of the conditions of your release, you

21  could be sentenced to spend up to two mores years in prison

22  without credit for the time that you had previously been in

23  prison and without credit for the time that you had previously

24  been supervised.  Do you understand that?

25    THE DEFENDANT:  Yes, sir.

16

1          THE COURT:  In addition to prison and supervised

2    release the Court could sentence you to pay a monetary fine.

3    Now the fine could be as high as $250,000.00.  It could be

4    higher than that.  And to figure out the maximum amount of the

5    fine the Court will have to calculate two numbers.  One number

6    will be the amount of gain that you and others involved

7    obtained from committing the crime, and double that amount.

8    And the other number is the amount of loss suffered by victims

9    of the offense, and the Court would double that amount.  And

10   whichever of those numbers is highest, $250,000.00, double the

11   gain, or double the loss, that is the maximum amount of the

12   monetary fine.  Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Now, some people might think that if they

15   don't know exactly what could happen to them at sentencing they

16   wouldn't want to plead guilty to a crime and today I cannot

17   tell you what the maximum fine might be on this offense.  So if

18   that's something that you need to know before pleading guilty,

19   do not plead guilty today.  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Do you wish to proceed even though I

22   can't tell you what the maximum fine would be?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  In addition to prison, supervised

25   release, and the fine, the Court could also sentence you to pay

17

1  restitution which means paying to victims of the offense the

2  amount that they lost.  Here again, I can't tell you how much

3  that might be because I don't know how much the victims lost.

4  Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  In addition to everything else I've

7  already mentioned, the Court must require you, as part of the

8  sentence, to pay what's called a special assessment in the

9  amount of $100.00.  Do you understand that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  On top of everything else we've already

12 discussed, you should assume that the Court will order you to

13 forfeit certain property as described in your plea agreement.

14 And folks, I notice that the plea agreement makes reference to

15 an exhibit which purports to be attached to the original plea

16 agreement, but it's not, and refers to a, and I'm quoting now,

17 "The financial statement dated question mark."  Is that

18 something that you wish to amend?

19         MR. RILEY:  Yes, Your Honor, I apologize.  Can I have

20 one moment to speak with Mr. Talkin, Your Honor?

21         THE COURT:  Yes, please.

22              [Pause in proceedings.]

23         MR. TALKIN:  You can have this marked.  This is the

24 financial affidavit and it's dated --

25         THE COURT:  Well, why don't you correct the original,

1  physically attach the statement, and have Mr. Vargas and the

2  attorneys sign or initial the change.

3                    [Pause in proceedings.]

4            THE COURT:  All right.  Mr. Vargas, the documents

5  that I was talking about, Court Exhibit 1, the agreement has

6  now been changed.  I think today's date has been put in

7  Paragraph 10 referring to a financial statement and the

8  statement itself has been attached and the change appears to

9  bear your signature and the signatures of the lawyers.  Can you

10 just initial this document to reflect the change?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  All right.  And this financial statement,

13 is it something you reviewed and understood?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  Mr. Riley, is there a specific

16 aspect of the forfeiture that you should call to my attention?

17           MR. RILEY:  No, Your Honor.

18           THE COURT:  All right.  So where we left off before

19 when we were talking about the penalties for the first count, I

20 had already told you about prison, and supervised release, and

21 the fine, and the special assessment.  We were talking about

22 forfeiture and this financial statement will help the Court

23 determine what property, if any, is the product of your

24 engaging in this crime that should be forfeited.  Do you

25 understand that?

19

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Finally, in addition to

3   everything else I've already told you about, you should assume

4   that if you're convicted of this crime, at some point in the

5   future, possibly after you have served time in prison, you will

6   be removed from the United States.  Do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you feel you understand everything

9   that could happen as a result of the sentence on Count 1?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  All right.  Now, I'm going to turn to the

12  possible sentence on Count 2.  Keep in mind, you might not

13  begin to start serving the sentence until you completed the

14  sentence on Count 1.

15         If you're convicted of the crime charged in Count 2,

16  that's the drug conspiracy count, the Court can sentence you to

17  spend the rest of your life in prison.  Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  The Court, under normal circumstances,

20  must sentence you to spend at least ten years in prison on that

21  count.  Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  In addition to prison, the Court must

24  also impose a term of supervised release of at least five years

25  and possibly as long as the rest of your life.  And on this

1  count, if you violate the conditions of your release, you can

2  be sent back to prison for up to five years without credit for

3  the time previously served in prison and without credit for the

4  time previously supervised.  Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  In addition to prison and supervised

7  release, the Court could sentence you to pay a fine of up to

8  $10 million on this count.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  In addition, the Court must require you

11  to pay what's called special assessment in the amount of

12  $100.00 and that must be in addition to the $100.00 on Count 1.

13  Do you understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Once again, with this crime as well as

16  Count 1, you should assume that the Court will sentence you to

17  forfeit property based on what's in your financial statement,

18  and that at some point in the future you will be removed from

19  the United States.  Do you understand both of those things?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Do you feel that you understand the

22  sentence that can be imposed if you're convicted on Count 2?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Now, let's turn to the third count, the

25  firearms count.  If you're convicted of that crime, the Court

21

1  could sentence you to spend up to the rest of your life in

2  prison.  Do you understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Under normal circumstances the Court must

5  sentence you to spend at least ten years in prison.  Do you

6  understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  I'll just remind you and make sure you

9  understand, this count, the prison sentence cannot begin until

10  you have completed the sentence imposed on Counts 1 and 2.  Do

11  you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  With this count as well, the Court must

14  impose a term of supervised release of at least five years and

15  possibly as long as the rest of your life.  If you violate a

16  condition of release, you could be sentenced to up to five more

17  years in prison without credit for time previously served in

18  prison and without credit for the time previously supervised.

19  Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  In addition to prison and supervised

22  release on Count 3, the Court can sentence you to pay a fine of

23  up to $250,000.00.  Do you understand that?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  In addition, the Court must sentence you

22

1   to pay another special assessment in the amount of $100.00 and

2   that will be in addition to the $100.00 amounts separately

3   imposed on Counts 1 and 2.  Do you understand that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  And finally, as with the other two

6   crimes, you should assume that at some point in the future if

7   you're convicted of this crime, you will be removed from the

8   United States.  Do you understand that?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you feel you understand what can

11  happen at sentencing as a result of a conviction on Count 3?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Mr. Riley, there are a lot of components

14  to these sentences.  Have I omitted or misstated any of the

15  sentencing possibilities for any of the three crimes?

16          MR. RILEY:  No, Your Honor.

17          THE COURT:  Mr. Vargas, let's talk about how the

18  Court will go about choosing a sentence.  The first thing we

19  should discuss about that is the Federal Sentencing Guidelines.

20  Have you discussed those with your attorney?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  I want to make sure you understand that

23  you may have seen a calculation or an estimate of what the

24  guidelines  will be in this case from the prosecutors or from

25  your attorney or from someone else.  I'm sure that anyone who

23

1    tried to give you that information was trying to be accurate.

2    But you must understand that any calculation or estimate of a

3    sentencing guideline range that you've seen so far may be

4    incorrect.  That's because the only calculation that will count

5    in this case is the one that Judge Cogan will do at the time of

6    your sentencing.  Do you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  The way these guidelines work is they

9    help the judge consider a sentence by coming up with two

10   scores.  One score measures the seriousness of the offense.  So

11   in a case like this, the amount of drugs involved, loss

12   suffered by victims, your use of a gun, whether somebody was

13   hurt, all of these things could affect your score.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  The second score is based on your own

17   personal history.  If you've previously been convicted of an

18   offense, that would affect the second score.  Do you understand

19   that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  With these two scores, the judge can find

22   a box in a grid and written down inside that box is a range of

23   months.  It might be in a case like this a range that has a

24   number of months at the beginning and life in prison at the

25   top.  And that is the recommended sentencing guideline range

24

1   for the case.  Do you understand that?

2               THE DEFENDANT:  Yes, sir.

3               THE COURT:  Now, the Court must consider imposing a

4   sentence within the recommended range, but the Court doesn't

5   have to impose a sentence within that range.  The judge could

6   decide to give you a sentence that is more severe or more

7   lenient.  And in deciding what the sentence should be, the

8   Court must consider a number of factors including your

9   circumstances and the circumstances of the offense, the need to

10  impose a just punishment, the need to deter you and others from

11  committing crimes in the future, your need for effective

12  correctional treatment, and other circumstances as well.  And

13  the Court has to take into account all of those circumstances

14  and impose a sentence that it believes to be fair for all of

15  the circumstances.  Do you understand that?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  To help the judge do that the Probation

18  Department is going to write a report and as they prepare that

19  report, they'll interview you and you can have your attorney

20  present for that interview.  The Probation Department will

21  probably talk to the Government and they may interview others

22  as well.  And they'll prepare a report that has information

23  about your background and about what happened in this case and

24  about the law that applies, and it'll have a calculation of the

25  sentencing guidelines.  You'll get a chance to read that report

25

1   and review it with your attorney.  Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  You may not like what you see in the

4   report.  You may think it's inaccurate or unfair in some way.

5   You may think that the guidelines calculation is wrong.  None

6   of that will be a reason to take back your guilty plea.  Do you

7   understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  What you can do if you think there's a

10  problem with the report is object to it, and your attorney will

11  help you do that.  The judge will consider your objections and

12  he will rule on them.  Then he will listen to what you and your

13  attorney and the prosecutors and possibly others have to say

14  about what the sentence should be, and he will calculate the

15  sentencing guidelines and then he'll impose a sentence on you.

16  And at any step along the way of the process I just described

17  you may think that the judge makes a mistake or acts unfairly,

18  or you may think he gets the guidelines wrong.  Again, none of

19  that will be a reason to take back your guilty plea.  Do you

20  understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  If you think the judge makes a mistake of

23  some sort or acts unlawfully in any way at your sentence, you

24  can appeal the sentence but you won't be able to appeal the

25  determination of your guilt.  Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Do you have any questions

3   that you'd like to ask me about the charges in this case, about

4   your rights, about the sentencing possibilities, or anything

5   else in this matter?

6          THE DEFENDANT:  No, sir.  Everything's fine.

7          THE COURT:  All right.  I'm going to ask you that one

8   more time and the reason I do that is that people do sometimes

9   change their mind about pleading guilty and I want to be sure

10  you understand that if you come back later and ask to take back

11  your guilty plea, the prosecutor will probably argue that you

12  should not be allowed to do so because you said today that you

13  understood everything, you knew what you were doing and he'll

14  probably win that argument.  So if there's anything you need to

15  ask me about, or think about, or talk about with your lawyer,

16  now is the time to do it because later it may be too late.  Do

17  you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Is there anything you'd like to ask me?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Do you need more time to think about your

22  decision or to discuss it with your attorney?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Mr. Talkin, is there any legal reason why

25  your client should not plead guilty today?

27

1      MR. TALKIN:  No, Your Honor.

2      THE COURT:  Mr. Vargas, are you satisfied with the

3  legal representation you have received up until now?

4      THE DEFENDANT:  Yes, sir.

5      THE COURT:  Then tell me, please, how do you plead to

6  the charge contained in Count 1 of the superceding indictment

7  accusing you of Hobbs Act robbery conspiracy; guilty or not

8  guilty?

9      THE DEFENDANT:  Guilty.

10      THE COURT:  How do you plead to the charge set forth

11  in Count 2 of the superceding indictment accusing you of

12  conspiracy to distribute narcotics; guilty or not guilty?

13      THE DEFENDANT:  Guilty.

14      THE COURT:  How do you plead to the charge set forth

15  in count 3 of the superceding indictment accusing you of

16  unlawful use of firearms; guilty or not guilty?

17      THE DEFENDANT:  Guilty.

18      THE COURT:  Are you making these pleas of guilty

19  voluntarily and of your own free will?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  Has anyone threatened or forced you to

22  plead guilty?

23      THE DEFENDANT:  No, sir.

24      THE COURT:  Other than the promises that are written

25  down in your agreement with the Government, Court Exhibit 1,

28

1   has anyone made any promise that is causing you to plead

2   guilty?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Has anyone made any promise about what

5   your sentence will be?

6            THE DEFENDANT:  No, sir.

7            THE COURT:  Then tell me, please, in your own words

8   what you did that makes you think you've committed these

9   crimes.

10           THE DEFENDANT:  Well, I know I'm guilty because

11  together with others we together affected interstate commerce

12  while committing this robbery to other drug traffickers.  This

13  happened between 2007 and 2010.  During one of the robberies,

14  one of my coconspirators discharged a firearm.  The robberies

15  occurred in North Carolina, New York, and Georgia.  I together

16  with others went and executed a robbery that took place in

17  North Carolina in November of 2008.  The planning of this

18  robbery in which I took part occurred in Brooklyn, New York.

19  During these robberies I, along with others, took cocaine from

20  drug dealers that we intended to sell.  The amount of cocaine

21  was in excess of five kilograms.  I knew what I was doing was

22  wrong and illegal.  That's why I admit I am guilty.

23           THE COURT:  Mr. Riley, is there anything further that

24  you'd like to elicit or that you'd like to proffer?

25           MR. RILEY:  Not with respect to the allocution, Your

29

1   Honor.

2          THE COURT:  All right.  Do you agree that the

3   allocution is sufficient to establish the essential elements of

4   each of the three crimes in the superceding indictment?

5          MR. RILEY:  Yes, Your Honor.

6          THE COURT:  Is there anything further you think I

7   should discuss with Mr. Vargas for purposes of Rule 11?

8          MR. RILEY:  No, Your Honor.  There is one issue or

9   one portion of the plea agreement that I just wanted to draw to

10  the Court's attention.

11         THE COURT:  The stipulation?

12         MR. RILEY:  I'm sorry?

13         THE COURT:  Is it the stipulation?

14         MR. RILEY:  Yes, Your Honor.

15         THE COURT:  Okay.  Well, the stipulation as to facts,

16  I see it's in there, but I wanted to make sure there was an

17  allocution --

18         MR. RILEY:  Yes.  Fair enough, Judge.

19         THE COURT:  -- that stands on its own.

20         MR. RILEY:  Yes.

21         THE COURT:  All right.  Mr. Talkin, is there anything

22  further that you wish to have me discuss with your client under

23  Rule 11?

24         MR. TALKIN:  No, Your Honor.

25         THE COURT:  Based on what I've heard today, I find

30

1   that Mr. Vargas is competent to proceed.  I find that he's

2   acting voluntarily, that he fully understands his rights and

3   the potential consequences of his plea and that there's a

4   factual basis for his plea of guilty.  I therefore respectfully

5   recommend that the Court accept Mr. Vargas' plea of guilty to

6   each of the three charges in the superceding indictment.

7           I'll ask all of you to appear before Judge Cogan on

8   July 30th at 10 in the morning for sentencing.  And I'm going to

9   return to the Government for safekeeping the original

10  agreement.

11          Is there anything further for today?

12          MR. TALKIN:  Can I just speak with the Government for

13  a second?

14          THE COURT:  Sure.

15              [Pause in proceedings.]

16          MR. TALKIN:  No, there's nothing further at this

17  time.

18          THE COURT:  Anything further for the Government?

19          MR. RILEY:  No, Your Honor.

20          THE COURT:  All right.  Thank you all.  Have a very

21  good day.

22          MR. TALKIN:  Thank you, Your Honor.

23          MR. RILEY:  Have a good weekend.

24               *  *  *  *  *  *

25

31

1         I certify that the foregoing is a court transcript from an

2    electronic sound recording of the proceedings in the above-

3    entitled matter.

4

5    _____

6                              Mary Greco

7    Dated:  May 30, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25